THE PEOPLE OF THE STATE OF NEW YORK, THOMAS M. PETERS AND OTHERS, APPELLANTS, *v.* JAMES H. TWADDELL AND OTHERS, RESPONDENTS.

*Trustees of a corporation — when they do not hold over until their successors are elected — Right to vote by proxy — authority must be shown — Right of corporators voluntarily to meet and elect trustees.*

Under the provisions of the statute providing for the incorporation of benevolent, charitable and missionary societies, the terms of office of the trustees terminate upon the expiration of the year for which they are elected, and they do not, in the absence of a special provision in the constitution or by-laws, hold over until their successors are elected.

A member of a corporation is not entitled to vote by proxy, unless specially authorized by law so to do.

Where a corporation duly organized and existing has for several years failed to elect trustees, and there is no provision authorizing those formerly elected to hold over until their successors are chosen, or requiring the trustees or other officers to preside at or do any act in relation to the election, it is within the power of the corporators themselves, without any new legislative aid, voluntarily to meet at the time designated in the constitution and elect a new board of trustees.

APPEAL from a judgment in favor of the defendants, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Charles W. Marsh*, for the appellants.

*John H. Strahan*, for the respondents.

Daniels, J.:

This action was brought to try the title of the defendants, as trustees of a charitable corporation, called the "Shepherd's Fold of the Protestant Episcopal Church of the city of New York." The trustees were twenty-one in number, and the offices were claimed by the plaintiffs, other than the people, as well as by the defendants. The corporation was formed under the general laws of the State, providing for the creation of benevolent, charitable, scientific and missionary societies, and the proper certificates for its creation were made and filed in March, 1869. This constituted the associates, or persons who signed and acknowledged the certificates, and their successors, a body politic and corporate. (2 R. S. [5th ed.], 623, § 2.) And as such they were empowered to make such by-laws for the management of their corporate affairs as they should deem proper, provided they were not inconsistent with the constitution and laws of this State, or of the United States. (2 R. S. [5th ed.], 624, § 2.)

The trustees who were named in the certificate for the first year of the existence of the corporation it was declared should hold their offices until others might be elected in their places, but no such provision was inserted in the constitution or by-laws of the corporation concerning the offices of those elected to succeed them. And without that, it seems to be the result of the provisions of the statute upon this subject that their official functions would terminate at the expiration of the year for which they might be afterwards elected. (2 R. S. [5th ed.], 624, §§ 3 and 4.)

No controversy arose concerning the proceedings of the corporation until after the election was held in the year 1874. It proceeded regularly in the exercise of its functions and the maintenance of its charities down to that year, and its trustees were lawfully elected in November of that year, for the ensuing year, according to the provision made by its constitution; but after that, nothing seems to have been done in the way of carrying on the operations of the corporation. At the close of that year its home became uninhabitable, and the children in its custody and under its protection were placed in the hands of another institution, and of other persons, and this continued to be the condition of the affairs of the corporation from that time down to March,

1877. It did nothing in the way of dispensing its charities or exercising its corporate functions, but it was apparently in an inanimate condition.

On the 14th of March, 1877, a meeting of some of the associates was held. This was convened by a notice given by William K. Gardner, who was one of the original corporate associates, but was not one of the trustees elected in November, 1874. That was the last board of trustees elected for the corporation before this meeting was held in March, 1877 ; and, under the provisions of the statute contemplating an annual election, and a vacancy in their offices when such election should be omitted, their terms of office appear to have expired at the end of the year succeeding their election in 1874. (2 R. S. [5th ed.], 624, §§ 3, 4.)

These sections seem to be capable of no other construction, than that they were designed to express it to be the intention of the Legislature that the trustees should be elected annually, and when not so elected, that their offices should become vacant. For that reason, provision was made in terms for filling the vacancies resulting from the omission to hold an annual election; and accordingly it was provided that they might be filled in such a manner as the by-laws of the society directed. This clearly would not have been done, if it had been designed that the trustees should hold over after the expiration of the year for which they were elected. And in this case no provision was made, either in the constitution or by-laws of the corporation, designed to meet such an emergency. The possibility of its occurrence does not seem to have been contemplated, and for that reason it was left unprovided for. The corporation consequently, after the termination of the official year for which the trustees were elected in 1874, was left without trustees, and no statutory mode was provided for supplying the vacancies. It continued in this state until this meeting was held in March, 1874. It was not dissolved because of the failure to elect trustees, for that omission, it had been declared, should not produce its dissolution. It was still a corporation, consisting of the persons who had become legally associated for that purpose ; but it was in an inactive condition, and the agencies provided for by the statute, through which its functions were to be executed, had ceased for the time being to exist.

It was to supply this deficiency that the meeting of the 14th of March, 1877, was called by Mr. Gardner, whose own official existence had long before expired. At that meeting, the defendants in this case were elected trustees of the corporation. But it appeared that the corporators at that time consisted of at least twenty persons, and eleven only are shown to have been in attendance at this meeting, and of those, the evidence of the witness, detailing its occurrence, discloses that two, namely, Mr. and Mrs. Gardner, were not present in person, and also that Mrs. Cowley only made her appearance as the meeting was adjourning. This showed less than a majority in attendance upon this occasion, and for that reason an election could not regularly be had by those assembled. (Angel and Ames on Corporations, § 499.) For no legal authority existed empowering Mr. and Mrs. Gardner to appear there through the agency of any other person, and without that it could not legally be done. See *Philips* v. *Wickham*, (1 Paige, 590, 598), where the proposition is declared to be the law, that the right of voting by proxy is not a general right, and the party who claims it must show a special authority for that purpose. No such special authority was shown in this case, and the consequence is that this meeting, at no time, had a majority of the associates in attendance. At the most, but eight persons appear to have participated in the proceedings of this meeting, and in the election of the defendants as trustees of the corporation. To supply this defect, it was stated that the minutes of this meeting were approved and adopted at a subsequent meeting, held on the 14th of September, 1877; but, as it was not shown that a majority of the corporators was then actually in attendance at that meeting, its action did not produce that result. The approval made adds no force to the proceedings of the meeting of March, 1877. Upon this proof it is evident that the defendants were not legally elected trustees of this corporation, even if the meeting should be held to have been lawfully convened. So small a number of the corporate associates could not regularly supply the omission to make the annual election of trustees. But, even if this meeting should be conceded to possess the power which the persons convened endeavored to exercise, and the defendants were lawfully elected by it as the trustees of the corporation, they were still

elected only to fill the vacancies then existing in these offices, and as such, they could not extend their terms beyond the unexpired portion of the year for which their election took place. They would necessarily be superseded by the action of the corporation at the next regular election, taking place conformably to the provisions made upon this subject in the constitution, which, for this purpose, seems to have been adopted as a part of the by-laws of the corporation.

By this constitution, the annual meeting of the institution for the election of its officers was required to take place on the first Monday of November in each year, or at such time or place as the executive committee should appoint, and such a meeting was in fact convened in November, 1879, by the executive committee which had been created by the trustees elected in November, 1874. It was called for the first Monday of November, but a quorum, owing to a severe storm, failed at that time to appear, there being but nine members in attendance. The meeting, after becoming organized, adjourned until the twelfth day of the same month, and on that day more than a majority of the corporators appeared in attendance, and they then proceeded to elect a new board of trustees, and the result of their action was that the plaintiffs in this case, other than the people, were elected as the trustees of the corporation for the ensuing year, and under that election they claimed to have been legally placed in the offices of trustees of the corporation. It is not necessary to hold, and perhaps that could not be properly done, that this meeting was regularly called by the old executive committee, whose functions must have terminated with the year for which they had been elected as trustees. Their action was not necessary for the purpose of sustaining the legality of the defendants' election, for, as the corporation continued to exist, it was within the power of the corporators themselves, without any official action, voluntarily to meet at the time designated in the constitution for that purpose, and elect a new board of trustees. This resulted from the fact that the statute secured to them a corporate existence and corporate succession for the time specified in the charter or certificate of organization, even though the election of trustees for any year should be omitted.

It has also been substantially so held in a work of standard

authority on this subject. (Angel and Ames on Corporations [4th ed.], §§ 138, 771.) There it is stated to be the law, that the stockholders compose the company, and the managers, directors or officers are their agents, necessary for the management of the affairs of the company, but they are not essential to its existence as such, not forming one of the integral parts. The corporation exists, *per se*, so far as requisite to the maintenance of perpetual succession and the holding and preserving of its franchises. The non-existence of the managers does not suppose the non-existence of the corporation. The latter may be dormant, its functions may be suspended for the want of means of action, but the capacity to restore its functionaries by means of new elections may remain. When, therefore, the election of its managers, directors or other officers is by charter to be conducted solely by the stockholders, the charter or act of incorporation not requiring the managers, directors or other officers to preside at, or to do any act in relation to, the election, a failure to elect such officers on the charter day will not dissolve the corporation, but the election of officers may take place on the next charter day, without any new legislative aid. These principles seem to be amply sustained by the authorities referred to in their support ; and, as to corporations of this description, they have been practically sanctioned by the provisions of the act under which this one was created. Substantially the same point was held *In re Wheeler* (2 Abb. [N. S.], 361). In that case the inspectors who were required to preside at the election unlawfully refused to do so, and the election was still held to be a valid one, although their functions were exercised by other persons. Under these authorities, this meeting of the corporators, in November, 1877, may well be held to have been lawfully convened, even though the persons calling it together had ceased to be capable of exercising the functions of an executive committee. All that such a committee was authorized to do, in any event, was to designate the time and place where the corporators should convene to hold their annual election, when the meeting should not be held on the first Monday in November. If they should voluntarily meet on that date, then the constitution rendered such a meeting a lawful one. They were then, without the intervention of any officers, empow-

ered to elect a legal board of trustees, and on the adjourned day, when more than a majority were in attendance, they exercised that authority by electing the plaintiffs. For that reason, even if these defendants had been lawfully elected by the meeting of the fourteenth of March, their functions ceased with the expiration of the official year, and they were then superseded as trustees by those elected at the meeting held in November.

It has been claimed that the time for the annual meeting was changed in March, 1877, and that this meeting in November was without authority. But the resolution, if one was then adopted, for the purpose of changing the annual meeting to March, instead of November, was without authority, for the reason that no majority of the corporators was in attendance at this meeting, as that has already been shown, and besides that, no attempt was made to amend the provision of the constitution upon that subject, pursuant to its own authority. By article 9, that could only be done by a meeting of the board of trustees, and then only by a two-thirds vote of those who were present, and no such action as this is shown to have taken place. Notwithstanding the action of the meeting held in March upon this subject, the provision of the constitution requiring the meeting to be held in November still remained in force ; and, as more than a majority of the associate corporators were present upon that occasion, and concurred in the election of the plaintiffs as trustees, they lawfully became entitled to these offices, and from that time they were empowered to manage the affairs of this corporation. For these reasons, the second election of the defendants, held in March, 1877, was unauthorized and inoperative. The time for holding the annual election under the constitution was still the first Monday in November of each year, and the plaintiffs being elected at such a meeting, were the lawful trustees for the year following that election, and they and their successors, and not the defendants, were the trustees of this corporation.

For these reasons, it becomes unnecessary to examine the numerous and needlessly minute propositions submitted to the court at the close of the charge. It is enough that the plaintiffs were entitled to a direction of a verdict in their favor, which, under the circumstances, should have been given to the jury, and

for the refusal to give that direction, the judgment and order should be reversed and a new trial ordered, with costs to abide the event.

BRADY, P. J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Judgment and order reversed and new trial ordered, with costs.